# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCE PAUL RAYMOND WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> DRAKAINA LOGISTICS, et al., <br><br> Defendants. | Case No.  1:21-cv-01436-NONE-SKO <br><br> **FIRST SCREENING ORDER** <br><br> (Doc. 4) <br><br> **TWENTY-ONE (21) DAY DEADLINE** |

## I.   INTRODUCTION

On September 28, 2021, Plaintiff Prince Paul Raymond Williams, proceeding *pro se*, filed a complaint. (Doc. 1 ("Compl.").)  Plaintiff also filed an application to proceed *in forma pauperis*, which was granted on September 30, 2021. (Docs. 2 & 3.)  On October 14, 2021, before the Court screened the initial complaint, Plaintiff filed a First Amended Complaint ("FAC") as a matter of course, *see* Fed. R. Civ. P. Rule 15(a)(1). (Doc. 4 ("FAC").)  Plaintiff's FAC, which supersedes the initial complaint filed on September 28, 2021, *see Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc), is now before the Court for screening.  As discussed below, Plaintiff's allegations are insufficient to state a cognizable claim.  Plaintiff is granted leave to file a second amended complaint and is provided the pleading requirements and legal standards under which his claims will be analyzed.

///

///

### A. Screening Requirement and Standard

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time, if the Court determines that the allegation of poverty is untrue, or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of a complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See, e.g.*, *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

### B. Summary of the First Amended Complaint

On approximately July 27, 2021, Plaintiff began working as a driver for Defendant Drakaina Logistics ("Drakaina"), which is a contracted Amazon Delivery Service Partner. (FAC at ¶ 17.) Defendant Karen Eoff is the Chief Executive Officer of Drakaina, and Defendant Paul Vargas is a manager at the company. (*Id.* at ¶¶ 5–6.)

On September 2, 2021, Eoff provided Plaintiff with two income withholding orders. (FAC at ¶¶ 18–20.) Neither order contained a name or signature of a judicial officer or a date of signature. (*Id.* at ¶ 21.) Instead, the two orders bore the names of Defendants Kerly Keokominh and Janet Ziadeh, respectively, both of whom are "Child Support Representatives" and the "issuing official" of the orders. (*Id.* at ¶¶ 19–21.)

Shortly after Plaintiff was provided with the income withholding orders, Plaintiff informed Eoff of a lower back injury that was adversely affecting the range of motion of his left foot. (FAC

2

at 22.) Eoff stated that she would send Plaintiff "help" if he needed it. (*Id.*) Plaintiff then loaded his truck and proceeded on his delivery route, but he needed to pull over due to physical and psychological stress and pain from his back injury, in addition to frustration over the two income withholding orders "alleging debt." (*Id.* at ¶ 23.) When Plaintiff contacted Vargas to request time off for the day to recover from his issues, Vargas stated that "if Plaintiff did not complete his route, his actions would be considered 'job abandonment.'" (*Id.*)

On September 7, 2021, Plaintiff provided Eoff both personally and via mail a notice demanding that Drakaina "cease and desist" from sending Plaintiff's personal property to third-party agencies, including the Fresno County Department of Child Support Services and the Solano County Department of Child Support Services, unless Eoff could provide, within three days from the date of the notice, "proof of a warrant signed by a judge of proper jurisdiction authorizing" Drakaina to seize his property. (FAC at ¶ 24.) Later that day, Eoff sent Plaintiff a message via WhatsApp, stating that Drakaina was required to comply with the income withholding orders. (*Id.*) Eoff informed Plaintiff that Plaintiff could contest the orders by filing a request for hearing, as set forth in the income withholding orders. (*Id.*) When Plaintiff asked Eoff to provide the law requiring her to withhold Plaintiff's wages, Eoff did not reply. (*Id.*)

The next day, on September 8, 2021, Plaintiff sent Eoff a message on WhatsApp with case law supporting his position that Drakaina did not have the authority to withhold his wages and stated, "[Y]ou taking my money without my permission would be unconstitutional as well, [Eoff]. Harm me financially if you choose . . . and I'll do what the letter says the day I see a garnishment." (FAC at ¶ 26.) Eoff reiterated that the income withholding orders would remain in place as required and Plaintiff should file paperwork to request a hearing if he wanted to contest the orders. (*Id.* at ¶ 27.) Eoff indicated that she would lift the income withholding orders immediately if she received "paperwork" to do so, but Plaintiff's "continued threats, bullying and now insults with [sic] not change" her position. (*Id.*)

On September 10, 2021, Plaintiff's wages were garnished in the amount of $411.57. (FAC at ¶ 29.) Plaintiff subsequently mailed a "NOTICE OF INTENT TO SUE" to Eoff. (*Id.* at ¶ 30.) Plaintiff's wages were again garnished in the amount of $411.57 on September 24, 2021, and

3

October 8, 2021. (*Id.* at ¶¶ 31, 33.)

On October 5, 2021, Plaintiff mailed Keokominh and Ziadeh a "NOTICE DEMANDING KERLY KEOKOMINH AND JANET ZIADEH CEASE AND DESIST FROM SEIZING MY PERSONAL PROPERTY." (*Id.* at ¶ 32.) Plaintiff did not receive a response from Keokominh and Ziadeh within the time frame demanded in his cease-and-desist letter. (*Id.* at ¶ 39.) On October 11, 2021, Plaintiff mailed Keokominh and Ziadeh a "NOTICE OF INTENT TO SUE." (*Id.* at ¶ 40.)

On October 8, 2021, Plaintiff arrived to work seven minutes late due to car troubles. (*Id.* at 34.) Upon arrival, Plaintiff proceeded to look for his designated pouch containing his work supplies, including truck keys and a company phone, before starting his route, but he was unable to locate it. (*Id.*) Plaintiff sought assistance from Vargas, who informed Plaintiff that he had to "give away" Plaintiff's route because Plaintiff was late. (*Id.* at ¶ 35.) When Plaintiff asked Vargas to provide the policy regarding attendance and the "giving away" of assigned routes, Vargas stated that he was busy and that Plaintiff should talk to Eoff. (*Id.*)

Plaintiff then went to Drakaina's office located at 958 Ryan Avenue, Clovis, California, intending to speak with Eoff regarding Drakaina's policies. (FAC at ¶ 36.) Plaintiff was greeted by a woman who told him that Eoff was "unavailable" and "out of town." (*Id.*) Minutes later, Plaintiff returned a missed call from Eoff, who questioned why Plaintiff had appeared at her home. (*Id.* at ¶ 37.) Plaintiff stated that he was unaware that Drakaina's office was also Eoff's home. (*Id.*) When Plaintiff asked Eoff to provide him with Drakaina's policy regarding attendance and "giving away" assigned routes, Eoff told him to "[s]hut the fuck up." (*Id.*) Plaintiff was then terminated by Eoff without explanation. (*Id.* at ¶ 38.)

Plaintiff names Drakaina, Eoff, Vargas, Keokominh, and Ziadeh (collectively, "Defendants") as defendants in this action. (FAC at 1.) The FAC asserts claims under 42 U.S.C. § 1983 ("section 1983") for violations of his constitutional rights and under various other federal statutes. (*Id.* at ¶¶ 42–131.) Plaintiff requests compensatory damages in the amount of $1,500,000.00, punitive damages in the amount of $1,500,000.00, special damages in the amount of $500,000, "relief under 42 U.S.C. § 1983," and any further relief deemed appropriate by the Court. (*Id.* at ¶¶ 132–33.)

4

## II.    DISCUSSION

**A.    Section 1983 Claims**

    **1. Legal Standard**

Section 1983, known as the Civil Rights Act, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). With regard to the first element, private parties are not generally acting under color of state law for the purposes of section 1983. *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.") (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936–37 (1982)).

There exist, however, some circumstances in which the actions of a private actor may render that actor liable under section 1983. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954 (9th Cir. 2008) (en banc). Specifically, a plaintiff must show that "the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Lugar*, 457 U.S. at 937. "The

5

Supreme Court has articulated four tests to determine whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted).  The "most relevant" of these are the "public function" and "joint action tests," as these tests "largely subsume" the other two. *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 & n.13 (9th Cir. 2013).

Under the "public function test," private individuals or entities may be deemed state actors for purposes of section 1983 when they perform a public function that has been "traditionally the *exclusive* prerogative of the State." *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982) (citations and quotation marks omitted) (emphasis added in *Rendell-Baker*).  "That a private entity performs a function which serves the public does not make its acts state action." *Id.*  Under the joint action test, a private individual may be liable as a state actor under section 1983 if he or she was part of a conspiracy or was a "willful participant in joint action" with a state actor that caused the constitutional violation. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).  "To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Franklin*, 312 F.3d at 445.  "The Ninth Circuit requires a 'substantial degree of cooperation' between the government and a private citizen before finding such a conspiracy." *Annan-Yartey v. Honolulu Police Dep't*, 475 F. Supp. 2d 1041, 1046 (D. Haw. 2007) (quoting *Franklin*, 312 F.3d at 445).

As for the second element, a person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.' " *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* at 1183 (quoting

6

*Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must also demonstrate that each named defendant personally participated in the deprivation of his rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### 2. Plaintiff Has Not Sufficiently Alleged that Defendants Acted Under Color of State Law

Plaintiff alleges several section 1983 claims against Defendants for violations of his constitutional rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments.[1] (FAC at ¶¶ 42–83, 124–31.). With regard to Defendants Keokominh and Ziadeh, the FAC indicates that they are "Child Support Representative[s]" but it is unclear which governmental entity they are officers or employees of, if at all. As for Defendants Drakaina, Eoff and Vargas, they are private parties, and the FAC has not alleged sufficient facts establishing that their conduct is fairly attributable to the government. Plaintiff's conclusory allegations that Defendants "conspired" to deprive him of his various constitutional rights (*see, e.g.*, FAC at ¶¶ 86, 94) are insufficient to demonstrate state action, especially because it is unclear from the FAC if Keokominh and Ziadeh are governmental actors. If Plaintiff chooses to amend his complaint, any claim pursuant to section 1983 should allege facts establishing whether each defendant is a state or private actor and whether any private actor's conduct is fairly attributable to the government.

### 3. Even Assuming State Action by Defendants, Plaintiff Has Not Sufficiently Alleged Deprivation of a Constitutional Right

#### a. First Amendment

Plaintiff alleges that Defendant Eoff "conspired with" Defendants Keokominh and Ziadeh

---

[1] The Court notes that Plaintiff describes actions taken by Defendants Drakaina and Vargas in the "Statement of Facts" section of the FAC, but Plaintiff does not mention Drakaina or Vargas in any of the specific causes of action.

"to abridge Plaintiff's rights to freedom of speech, and petition the Court regarding the alleged debts, by enforcing an alleged Company Requirement [to withhold his wages]." (FAC at ¶ 44.) The nature of Plaintiff's First Amendment claim is unclear.  There are no allegations regarding how Defendants abridged Plaintiff's right to free speech or denied Plaintiff access to the courts by garnishing his wages in accordance with the income withholding orders.  In fact, the FAC specifically indicates that Defendant Eoff informed Plaintiff of the procedure for challenging those orders, and that "[w]hen [Eoff] receive[d] the paperwork to lift [the] Income Withholding Orders [she would] do so immediately." (*See* FAC at ¶¶ 24, 27.)  Plaintiff has, therefore, failed to state a claim for violation of the First Amendment.

### b. Fourth Amendment

Plaintiff alleges a violation of his Fourth Amendment rights, specifically that Defendant Eoff "conspired with" Defendants Keokominh and Ziadeh "to seize Plaintiff's papers without a warrant supported by proper judicial affirmation, by enforcing an alleged Company Requirement [to withhold his wages]." (FAC at ¶ 52.)  The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.  U.S. Const. amend. IV.  To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Rubio*, 727 F.2d 786, 796–97 (9th Cir. 1983).

Here, there are no allegations in the FAC that Plaintiff was seized or that there was a search so as to implicate the Fourth Amendment.  Plaintiff instead alleges that Defendant Eoff's garnishment of his wages was improper because the income withholding orders bearing Defendants Keokominh's and Ziadeh's names are invalid. (FAC at ¶¶ 52, 54.)  Accordingly, Plaintiff has failed to state a claim for violation of the Fourth Amendment.

### c. Fifth and Fourteenth Amendments

Plaintiff alleges a violation of his due process rights under the Fifth and Fourteenth Amendments by Defendants Eoff, Keokominh, and Ziadeh. (FAC at ¶¶ 58–66.)  "[T]he Fifth

8

Amendment's due process clause applies only to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). As there are no allegations in the FAC that any of the named defendants are federal actors, the Fifth Amendment's due process clause does not apply.

"The due process clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process." *Williams v. Fresno Cnty. Dep't of Soc. Servs.*, No. 1:21–CV–00596–DAD–SAB, 2021 WL 3033578, at *6 (E.D. Cal. July 19, 2021), *report and recommendation adopted*, 2021 WL 4751408 (E.D. Cal. Oct. 12, 2021) (citing *Albright v. Oliver*, 510 U.S. 266, 272 (1994)). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[P]rocedural due process claims are resolved by balancing tests, where differing interests can give rise to many differing procedural requirements." *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

"The substantive protections of the due process clause bar certain governmental actions regardless of the fairness of the procedures that are used to implement them. Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression." *Williams*, 2021 WL 3033578, at *6 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 846 (1998)). The Supreme Court has held that "the substantive component of the Due Process Clause is violated . . . only when [official conduct] 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' " *Lewis*, 523 U.S. at 847. "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense." *Brittain*, 451 F.3d at 990 (quoting *Lewis*, 523 U.S. at 846).

"Substantive due process is ordinarily reserved for those rights that are 'fundamental.' " *Brittain*, 451 F.3d at 990. "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," and the Supreme Court has been reluctant to expand the concept of substantive due process. *Albright*,

510 U.S. at 271–72. To state a substantive due process claim, a plaintiff must "show both a deprivation of [his] liberty and conscience shocking behavior by the government." *Brittain*, 451 F.3d at 991.

Plaintiff's vague and conclusory allegation that Defendant Eoff "conspired with" Defendants Keokominh and Ziadeh "to deprive Plaintiff of life, liberty, and property, without due process of law and equal protection of the laws, by enforcing an alleged Company Requirement" is insufficient to state a due process claim under the Fourteenth Amendment. It is unclear from the FAC how Plaintiff has been denied due process. The FAC does not identify any specific property or liberty interest, much less allege any "conscience shocking" behavior by Defendants. Thus, Plaintiff fails to state a claim under the Fourteenth Amendment.

### d. Sixth and Seventh Amendments

Plaintiff alleges that Defendants Eoff, Keokominh, and Ziadeh deprived him of his right to a jury trial under the Sixth and Seventh Amendments. (FAC at ¶¶ 67–75.) The Sixth Amendment, which guarantees the right to a jury trial in criminal prosecutions, U.S. Const. amend. VI, does not apply here. The Seventh Amendment provides for the right to a trial by jury at suits in common law. U.S. Const. amend. VII. The Seventh Amendment guarantee "appl[ies] to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Tamosaitis v. URS Inc.*, 781 F.3d 468, 485 (9th Cir. 2015) (quoting *Curtis v. Loether*, 415 U.S. 189, 194 (1974)). Here, Plaintiff does not provide any allegations to support a claim that he was not afforded a jury trial when he should have been. Thus, Plaintiff fails to state a cognizable claim under the Seventh Amendment.

### e. Eighth Amendment

Plaintiff alleges that Defendants Eoff, Keokominh, and Ziadeh violated his rights under the Eighth Amendment by conspiring to "subject Plaintiff to excessive fines, by enforcing an alleged Company Requirement." (FAC at ¶ 78.) The Eighth Amendment prohibits excessive bail, fines or cruel and unusual punishment. U.S. Const. amend. VII. These protections were designed to protect those convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) (The Eighth Amendment applies "only after the State has complied with

the constitutional guarantees traditionally associated with criminal prosecutions."). Based on Plaintiff's allegations, there is no indication that he is entitled to Eighth Amendment protections.

### B. Claims Under Federal Criminal Statutes

Plaintiff alleges violations of 15 U.S.C. § 645 and 18 U.S.C. §§ 241, 242, 245. (FAC at ¶¶ 84–115.) "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979)). Rather, the Court is to consider if Congress intended to create the private right of action in the statute, looking first to the language of the statute. *Id.* "Civil causes of action . . . do not generally lie under the criminal statutes contained in Title 18 of the United States Code." *Del Elmer; Zachay v. Metzger*, 967 F. Supp. 398, 403 (S.D. Cal. 1997). Here, the statutory provisions identified by Plaintiff provide for fines and incarceration for criminal offenses. There is no language in the statutes that would imply a cause of action, allowing Plaintiff to seek a remedy via civil action. *See, e.g.*, *Collins v. Plan. Comm'n of City of Madera, Cal.*, No. 1:10–CV–00430 AWI GSA, 2010 WL 2011571, at *6 (E.D. Cal. May 19, 2010), *report and recommendation adopted sub nom.*, 2010 WL 2635072 (E.D. Cal. June 29, 2010) ("Plaintiffs cannot state claims pursuant to Title 18 of the United States Code sections 241, 242 and 245."); *Vonne Ray v. Warner*, No. SACV1501242JLSDFM, 2015 WL 5444491 (C.D. Cal. Sept. 14, 2015) (finding that 18 U.S.C. §§ 241, 242, and 15 U.S.C. § 645 "do not provide a basis for civil liability.")

### C. Claim Under 31 U.S.C. § 3720D

Lastly, Plaintiff alleges a violation of 31 U.S.C. § 3720D ("section 3720D"). (FAC at ¶¶ 116–123.) Section 3720D applies to actions taken by "the head of an executive, judicial, or legislative agency that administers a program that gives rise to a delinquent nontax debt owed to the United States." 31 U.S.C. § 3720D(a). The head of an executive, judicial, or legislative agency, however, may contract with a person for collection service to recover a debt owed to the United States. 31 U.S.C. § 3718.

Here, Plaintiff has not alleged that Defendants contracted with the head of an executive, judicial, or legislative agency, or that Defendants are seeking to recover a debt owed to the United

States.  Indeed, any debt owed appears to be to Fresno and Solano Counties.  (*See* FAC at ¶ 24.) Therefore, Plaintiff has not alleged a cognizable claim under section 3720D.

### III.     CONCLUSION AND ORDER

As noted above, the Court will provide Plaintiff with an opportunity to amend his claims and cure, to the extent possible, the identified deficiencies. *Lopez*, 203 F.3d at 1130.  Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678–79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citations omitted). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the prior complaint. *Lacey*, 693 F.3d at 927.  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  E.D. Cal. Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff is granted leave to file a second amended complaint; and
2. Within twenty-one (21) days from the date of service of this order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal.

**If Plaintiff fails to file an amended complaint in compliance with this order, the undersigned will recommend to the assigned district judge that this action be dismissed for failure to state a claim and to obey a court order.**

IT IS SO ORDERED.

Dated:  **December 30, 2021**           /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE